**James E. JOHNS, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare.**

**Civ. No. 3692.**

United States District Court
M. D. Tennessee,
Nashville Division.

May 12, 1967.

J. C. McMurtry, Gallatin, Tenn., for plaintiff.

Gilbert S. Merritt, Jr., U. S. Atty., and Kent Sandidge, III, Asst. U. S. Atty., Nashville, Tenn., for defendant.

## MEMORANDUM

WILLIAM E. MILLER, Chief Judge.

This cause is before the Court to review the decision of the Secretary of Health, Education and Welfare on a claim for social security benefits, 42 U.S.C.A. § 405(g). The Secretary has filed a motion for summary judgment, oral arguments have been heard and briefs have been submitted by the parties.

The decision of the Secretary concerns the application filed by plaintiff on August 22, 1962, for disability benefits and to establish a period of disability between the dates of May 24, 1961 and November 22, 1962. Plaintiff had previously filed an application for disability benefits on February 24, 1961. That application, however, was denied by the Secretary after a Hearing Examiner issued a decision finding that plaintiff

was not "disabled" within the effective period of the application and plaintiff's request for a review of the Hearing Examiner's decision was denied by the Appeal Council of the Social Security Administration on July 26, 1962. Plaintiff did not seek judicial review of the Secretary's decision within 60 days, thus that decision became binding with respect to the issue of plaintiff's disability through the effective period of that application, i. e., on or before May 24, 1961. 42 U.S. C.A. § 405(h). Plaintiff's application of August 22, 1962, was denied after a hearing had been conducted and the Hearing Examiner rendered a decision on September 25, 1963, finding that plaintiff had not established "that he has impairments, either singularly or in combination, of such severity as to render him unable to engage in any substantial gainful activity from May 24, 1961 and continuing thereafter through the date of the filing of his latest application and three months thereafter."

It is plaintiff's contention that the Secretary's decision denying plaintiff's application of August 22, 1962, should be set aside since the record shows that plaintiff has drawn a one hundred per cent disability pension from the Veterans Administration since June 1962. Plaintiff concedes that the burden of proving disability is upon him and that if there is substantial evidence to support the findings of the Hearing Examiner, said findings must be affirmed.

No one questions that plaintiff is no longer able to engage in the heavy manual labor to which he was accustomed. Plaintiff attended school for two years but he cannot read or write. He last worked as floor and sand moulder in an iron foundry in Kentucky for about five years ending in June 1958, at which time he left that employment to obtain treatment for pulmonary tuberculosis. Plaintiff was admitted to the Waverly Hills Tuberculosis Sanatorium, Waverly Hills, Kentucky, on June 26, 1958. He had resectional surgery of the upper lobe of the right lung on March 16, 1959, followed by a five-rib, tailoring thoracoplasty in April

1959. He responded well to the surgical procedures and his tuberculosis has been inactive or arrested since 1959. At some time subsequent to his contracting tuberculosis, plaintiff was granted a non-service connected disability pension by the Veterans Administration. Upon leaving the hospital in September 1959, plaintiff rented a small farm on which he raised some tobacco and a vegetable garden. After an examination by the Vetrans Administration in 1960, plaintiff's disability pension was discontinued. However, the pension was reinstated in June 1962, with disability fixed at one hundred per cent, after plaintiff had been confined to the Veterans Administration in Nashville, Tennessee, from April 23, 1962 to May 15, 1962, during which time it was determined that plaintiff had a chronic duodenal ulcer.

In his application of August 22, 1962, plaintiff listed his impairments as: "Ulcers, loss of lung and ribs," and he stated that the right side of his chest felt hot all the time and ached constantly and that he was so short of breath and weak that he could not work. The evidence in the present record includes the medical reports and statements submitted during the first hearing that resulted in the denial of plaintiff's earlier application, the clinical reports of the Veterans Administration, and the reports of physical examinations given to plaintiff on January 28, 1963, by Dr. H. R. Foreman, Nashville, Tennessee, and on March 26, 1963, by Dr. R. D. Ward, also of Nashville, at the request of the Hearing Examiner. Dr. Foreman's examination of plaintiff, which included an EKG, was essentially negative with the exception of plaintiff's lung condition. Dr. Foreman's clinical impressions were: Pulmonary tuberculosis, moderately advanced, inactive; Thoracoplasty on the right; and Duodenal ulcer, by history. It was his opinion that plaintiff had responded well to tuberculous therapy, that plaintiff's pulmonary insufficiency was of mild to moderate degree, and that his pulmonary reserve was quite adequate for moderate physical exertion. Dr. Ward's diagnosis

was similar to that of Dr. Foreman except he characterized plaintiff's ulcer as "peptic." Dr. Ward stated that plaintiff's condition was static and he remarked that "[i]f a job of limited activity cannot be found [for plaintiff], he is disabled." With respect to his ulcer condition, plaintiff stated that it remains inactive as long as he continues the prescribed medication and bland diet.

The Court is of the opinion that there is substantial evidence in the record to support the Hearing Examiner's finding that plaintiff had failed to establish that he was unable to engage in "any substantial gainful activity" during the period in question. Plaintiff does not dispute the Hearing Examiner's finding that he has some residual capacity for gainful employment; however, as indicated earlier, plaintiff contends that he has borne the burden of proof as to his disability since it is undisputed that he has drawn a one hundred per cent disability pension from the Veterans Administration since it was reinstated in 1962. It is well settled, however, that the Secretary makes his determination of the issue of disability on the facts before him, and while the findings of some other agency may be entitled to some weight, such findings are not binding on the Secretary. Gee v. Celebrezze, 355 F.2d 849 (7th Cir. 1966); Mischler v. Celebrezze, 227 F.Supp. 754 (E.D.La.1964); Thompson v. Flemming, 188 F.Supp. 123 (D.Or.1960). The record in this case shows that plaintiff is unable to engage in his previous occupation as a moulder in a foundry or similar heavy manual labor, yet there is substantial evidence to support a finding that plaintiff is able to engage in lighter work.

In this situation, it became the Secretary's burden to establish that there existed within the vicinity of plaintiff's residence available work within his reduced capabilities. Massey v. Celebrezze, 345 F.2d 146, 154 (6th Cir. 1965); May v. Gardner, 362 F.2d 616, 618 (6th Cir. 1966). To meet this burden, the Hearing Examiner called a vocational expert, Dr. Joseph J. Ray, to testify as to the type of jobs plaintiff could do and the avail-

ability of such employment. Dr. Ray observed plaintiff during the hearing and had reviewed the medical reports and statements concerning plaintiff's impairments. After consulting the "Dictionary of Occupational Titles" and other U. S. Department of Labor publications and the 1960 census, Dr. Ray expressed the opinion that there were several sedentary or light jobs existing in the national economy and in the Nashville area where plaintiff lives which plaintiff was capable of performing. Dr. Ray listed six sedentary jobs in the leather, textile and other industries which consisted mainly of minor inspection, assembly, sorting, and packaging functions and required from zero to third-grade education and approximately 30 days training. He also gave examples of light jobs such as closing box lids, sorting and storing shoe lasts, placing spokes in bicycle wheels, sorting bags, removing nails from boxes, etc., which he felt plaintiff could do. Dr. Ray did not limit his testimony to the enumerated jobs, citing these merely as examples of existing jobs within the relevant employment area which plaintiff would be able to perform.

On cross-examination, Dr. Ray conceded that certain variables such as production requirements and employer attitude or policy toward hiring persons with impairments would affect plaintiff's chances of obtaining work in such jobs. Dr. Ray further conceded that the fact that the Veterans Administration had found plaintiff to be 100 per cent disabled would also reduce his chances of obtaining such employment. Nevertheless, there is substantial evidence in the record to support the Hearing Examiner's finding that:

> While the claimant has not been able to carry on his usual work in his usual manner during the period under consideration, it has not been established by the evidence that he has been unable to engage in any substantial gainful activity, particularly light or sedentary work. * * * It seems clear to the hearing examiner that in addition to the jobs listed by Dr. Ray * * * based on the evidence in this case claim-

ant is able to perform many other occupations, such as inspecting small pieces of machinery, hose, socks, shoes, clothes, hats, ties, and the like; handling all types of merchandise of light weight material; operating an elevator; acting as a watchman or a guard at a building, factory, or warehouse; performing the duties of a locker room, a dressing or rest room porter or attendant, as well as many others listed in the Dictionary of Occupational Titles.

No doubt plaintiff would have difficulty in obtaining employment even without his physical impairments in view of his age and lack of education. However, this is not a case where the evidence indicates that the only available employer which has such sedentary tasks would not hire the claimant because of his physical condition. cf. Kirby v. Gardner, 369 F.2d 302, 305 (10th Cir. 1966). As the Sixth Circuit has recently stated:

> Whatever we have said on the duty of the Secretary to point to *available* jobs, we do not consider that this rule requires proof that the particular plaintiff with his particular injury * * * could obtain a presently open job at some named and identified commercial enterprise, if he applied for it. * * * Lane v. Gardner, 374 F.2d 612 (6th Cir., March 10, 1967).

In this respect, it should be noted that plaintiff's situation is analogous to the claimant in Collins v. Gardner, 373 F.2d 727 (6th Cir., February 15, 1967), in which the claimant's doctor testified that he was completely disabled from all work. In that case the claimant was precluded from engaging in his previous occupation as a coal miner because he suffered from silicosis. The government, however, introduced the testimony of a vocational expert to the effect that with his residual capacities the claimant could work as a packer, as an inspector, as an elevator operator, as a tobacco sorter, and as a light assembler, caretaker, watchman, etc. Undoubtedly the claimant in the *Collins* case faced the same difficulty with respect to the actual availability of sedentary jobs as does the plaintiff in this case, but the Court affirmed the denial of disability benefits, stating that "We * * * find substantial evidence in this whole record * * * that claimant does retain a residual capacity for substantial gainful employment at jobs which exist in the general area in which he lives." Collins v. Gardner, supra.

Reasonable minds may differ as to the conclusions to be drawn from the evidence, hence summary judgment does not lie. Defendant's motion for summary judgment is therefore treated as a motion for affirmance of the Secretary's decision on the record. Judicial review of the Secretary's findings of fact is limited to the inquiry of whether there is substantial evidence in the record to support such findings, and the Court is of the opinion that such evidence is present in this case. Accordingly, a form of judgment affirming the decision of the Secretary will be submitted.